UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: Ta-Von Becker,                                    Case No. 20-33765-KLP
      Debtor.                                          Chapter 13

## MEMORANDUM OPINION

This matter comes before the Court on the motion for relief (the "Motion") filed by Zachary Becker ("Mr. Becker") seeking a modification of the automatic stay to allow a Virginia state court to dissolve the marriage between Mr. Becker and the Debtor, Ta-von Becker (the "Debtor" or "Mrs. Becker"), and to divide their marital property.  The Debtor opposes the Motion, arguing that relief from stay is not necessary in order to dissolve the marriage and that permitting the state court to proceed with the division of property would disrupt her pending chapter 13 case by forcing her to expend her limited resources litigating her property interests in the state court.

The Court conducted an evidentiary hearing on August 25, 2021, taking the matter under advisement at the conclusion of the hearing.  After considering the pleadings, the evidence and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## Jurisdiction

---

[1] As required by Rule 52 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 52, made applicable herein by Rule 7052 of the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 7052.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the general order of reference for the U.S. District Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G).

## **Findings of Fact**

On September 9, 2020, the Debtor filed a petition under chapter 13 in this Court.  Her petition was accompanied by the requisite schedules and statement of financial affairs, as well as by her chapter 13 plan (the "Original Plan"). ECF Nos. 1,2.

On September 10, 2020, the clerk of court noted on the docket evidence of a previous bankruptcy the Debtor filed in this Court on October 3, 2019 (Case No. 19-35196-KRH), in which the Debtor received a chapter 7 discharge on January 9, 2020.  The chapter 7 discharge renders the Debtor ineligible to receive a discharge in the present case.  *See* 11 U.S.C. § 1328(f)(1).[2]

On January 26, 2021, the Court entered an order confirming the Original Plan.  The confirmation order provided that, upon entry, "all property of the estate shall revest in the Debtor."  Notwithstanding the revesting of property, the order prohibited the Debtor from conveying real estate without first obtaining an order from this Court.  ECF No. 23.

---

[2] On September 12, 2020, the clerk of court issued a notice that the Debtor is ineligible for a discharge and giving the Debtor twenty-one days to object thereto. ECF No. 10.  The debtor did not object to the notice.

On February 24, 2012, the Debtor filed a modified plan (the "Amended Plan") under which the Debtor will pay the Trustee the sum of $100 per month for 6 months, then $1263 per month for 53 months, resulting in a pro-rata distribution of approximately 1% for allowed non-priority unsecured claims.  The Amended Plan also provides for funding of $53,000 in arrearages due on the mortgage secured by the Debtor's principal residence at 5818 Heathers Crossing Drive, Chesterfield, VA (the "Heathers Crossing Property").  The Amended Plan was confirmed by the Court by order entered April 23, 2021 (the "Confirmation Order"), and it contained the same language regarding the revesting of property as the previous order confirming the Original Plan.

In her current bankruptcy case, the Debtor lists her interest in two parcels of real property.  ECF No. 1, Schedule A/B.  The first parcel, the Heathers Crossing Property, is described as being owned by the Debtor and another.  Confusingly, the schedule also indicates that the Debtor owns the current value of the entire property.  The second parcel is located at 12606 West Wood Sage, Midlothian, Virginia (the "West Wood Sage Property"). As she did with the Heathers Crossing Property, the Debtor describes the West Wood Sage Property as being owned by herself and another, though she simultaneously states that she owns the current value of the entire property.  The Debtor lists no other property, real or personal, as being owned herself and another.

In Schedule D, "Creditors Who Have Claims Secured by Property," the Debtor lists a debt to First National Bank that is secured by the Heathers Crossing

Property.[3]  She values the Heathers Crossing Property at $353,900.00 and lists the amount of First National Bank's claim as $338,000.00.  The Debtor also lists a debt to SunTrust Mortgage that is secured by the West Wood Sage Property.  She values that property at $181,000 and lists the amount of the claim as $77,000.00.  The Debtor indicates that First National Bank's debt is owed by herself and another, while she describes her obligation to SunTrust Mortgage as being owed only by herself.

In her Statement of Financial Affairs (the "SFA"), ECF No. 1, the Debtor describes herself as married and as having resided at the Heathers Crossing Property for the past three years.  Although she doesn't include Mr. Becker on her list of creditors, in Schedule H she lists him as a codebtor on the First National Bank obligation and shows his mailing address as 1616 Birchview Ct., Henrico, VA. In Part 3 of her SFA, the Debtor identifies only Capital One Auto Finance as having received payments in the amount of $600 or more in the 90 days prior to filing her bankruptcy.  She also states that she neither made payments on a debt nor

---

[3] First National Bank of Pennsylvania filed its proof of claim on September 30, 2020, listing a debt in the amount of $349,956.37.  It listed as collateral that real property located at 5818 Heathers Crossing Dr., Chesterfield, VA.  The Court recognizes the discrepancy between the address listed by First National Bank and the "Heather Crossing" address listed by the Debtor as her residential address.  However, in her schedules, the Debtor frequently refers to "Heathers Crossing Drive" as well. The stipulations by the parties docketed at ECF No. 60 refer to the property as "Heather Crossing Drive." For purposes of this opinion, the discrepancy is immaterial.  As the address of "Heathers Crossing Drive" was listed by the creditor in the Motion and appears in the legal documents attached to the proof of claim filed by the creditor, the Court will continue to refer to it as such but makes no finding as to the implications of the differing addresses.

transferred any property on account of a debt that benefitted an insider in the year prior to filing bankruptcy.

In Part 4 of her SFA, responding to the question of whether she has been a party in any lawsuit, court action, or administrative proceeding in the year prior to her bankruptcy filing, the Debtor lists only her 2019 chapter 7 bankruptcy proceeding. She states that she has no claims against anyone, including claims related to divorce or property settlement. In Part 7, the Debtor denies having transferred any property to anyone, other than in the course of her business or financial affairs, in the two years prior to filing bankruptcy.

In the Debtor's "Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period" (Official Form 122C-1), she states that she is married; however, she lists her non-filing spouse's income as "0.00." For the number of people in her household, she claims there are three.[4] There is no marital adjustment claimed to address the separate expenses of her spouse.

The Debtor has not amended her petition, schedules or statements since filing her current bankruptcy case. Despite increasing the funding to the chapter 13 trustee in her Amended Plan by a significant amount from what was provided in the Original Plan, the Debtor's Schedules I and J, reflecting her income and expenses, continue to reveal a monthly deficit exceeding $1000.

Neither the Original Plan nor the Amended Plan includes an arrearage on the SunTrust Mortgage, and both plans provide that the Debtor will make the

---

[4] In Schedule J, Mrs. Becker represents that she has one dependent, a 21-year-old son. Presumably, the other member of her household is Mr. Becker, her non-filing spouse.

regular contract payments going forward.  The budget (Schedules I & J) attached to the plans, however, does not include the regular contract payment to SunTrust Mortgage as an expense of the Debtor.  The Amended Plan does not alter the Original Plan's treatment of the SunTrust Mortgage; rather, it substantially increases funding to address postpetition arrearages owed to First National Bank on the Heathers Crossing Property, the Debtor's principal residence.

On August 11, 2021, a document docketed as "Stipulations Marked Up to Show Agreement by Ta-Von Becker and Between Movant Zachary Becker" was filed in advance of the August 25th hearing on the Motion. ECF No. 60.  The parties have represented that this marked up version of the stipulations accurately reflects the agreement of the parties as to the following facts:

> On June 3, 2013, Mr. Becker purchased real estate commonly known as 12606 West Wood Sage Drive, Midlothian, Virginia 23114 ("West Wood Property").

> On October 1, 2016, Mr. Becker and Debtor were married.

> On May 4, 2018, ownership of the West Wood Property was conveyed from Mr. Becker to Mr. Becker and Debtor as tenants by the entirety.

> The Debtor's principal residence is 5818 Heather [sic] Crossing Drive, Chesterfield, VA. 23832 and is owned as tenant [sic] by the entirety by the Debtor and Mr. Becker.

> On November 21, 2018, Mr. Becker filed a voluntary petition seeking relief under Chapter 13 of the Bankruptcy Code designated as Case No. 18-35875-KRH.

On January 28, 2019, Mr. Becker's Chapter 13 case was converted to Chapter 7 on the request of the Chapter 13 trustee (Case No. 18-35875; Doc.22).[5]

On November 13, 2019, Mr. Becker received his Chapter 7 discharge (Case No. 18-35875; Doc 86).

On October 3, 2019, the Debtor filed a filed a [sic] voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code designated as Case No. 19-35196-KRH.

On January 9, 2020, the Debtor received her Chapter 7 discharge (Case No. 19-35196; Doc 19), and Debtor's Chapter 7 case was closed on January 14, 2020 (Case No. 19-35196; Doc 22).

On September 9, 2020, less than eight months after receiving a Chapter 7 Discharge, Debtor then filed a voluntary petition in the instant case seeking relief under Chapter 13 of the Bankruptcy Code.

Suzanne E. Wade ("Chapter 13 Trustee") was appointed Chapter 13 Trustee of this case and continues to serve in that capacity.

On April 22, 2021, the Debtor's Amended Chapter 13 Plan was confirmed (Case No. 20-33765-KLP; Doc 45).

On March 8, 2021, the proof of claim bar dates expired.

Based on the Debtor's claims register, only twelve creditors filed claims for a total amount of $378,732.18.   Of that amount approximately $6,250.04 is for unsecured debts.

The Debtor's confirmed Chapter 13 Plan provides that the payments on the West Wood Property will be made outside of bankruptcy.

On October 4, 2020, Mr. Becker filed a Complaint in the Circuit Court of the County of Chesterfield seeking divorce from the Debtor.  *Becker v. Becker*, CL20-3412 (Va. Cir. Ct.)(the "Divorce Proceedings").  The Divorce Proceedings involve the dissolution of the marriage of Mr. Becker and the Debtor, equitable distribution, and determination of support and attorney's fees.

---

[5] References in these stipulations to "Doc" are to the electronic case file maintained by the Court, generally referred to as ECF.

On June 14, 2021, Mr. Becker filed a Motion for Relief from Automatic Stay ("Motion for Relief") (doc.no. 49).

On July 7, 2021, the Court held a hearing on the Motion for Relief and related pleadings and continued the hearing to August 4, 2021, to allow Mr. Becker's Chapter 7 Trustee to be added as a party to the matter.

On July 21, 2021, Mr. Becker amended the Motion (the "Amended Motion") to add Lynn L. Tavenner, Mr. Becker's chapter 7 trustee, as a respondent. ECF No. 55. Neither Ms. Tavenner nor Suzanne Wade, Mrs. Becker's chapter 13 trustee, responded to the amended motion for relief and neither trustee has made an appearance in this contested matter.[6]

During the evidentiary hearing conducted by the Court in connection with the Amended Motion, the following exhibits were admitted without objection on behalf of Mrs. Becker: (1) a copy of the Motion to Convert (the "Motion to Convert") filed by Mr. Becker's chapter 7 trustee,[7] (2) a copy of the Motion for Approval of Compromise and Settlement and Memorandum of Points and Authorities (the "Settlement Motion"),[8] and (3) the case details of the Divorce Proceedings in the

---

[6] On September 8, 2021, the chapter 7 trustee in Mr. Becker's case filed her final report, which contained a request for an award of fees for both the trustee and her attorney. An order approving the requested fees was entered on September 30, 2021.

[7] In the Motion to Convert (Case No. 18-35875-KRH, ECF No. 22), Mr. Becker's chapter 7 trustee alleged that Mr. Becker transferred ownership of the West Wood Sage Drive Property, "which has significant value and equity" from his sole ownership to himself and his spouse as tenants by the entirety "with no compensation" and that the transfer was not disclosed in the Statement of Financial Affairs filed with the Court. The trustee claimed that conversion to chapter 7 would be in the best interest of creditors because the debtor would have to pay a dividend that he would be unable to fund if he remained in chapter 13.

[8] The Settlement Motion (Case No. 18-35875-KRH, ECF No. 88) states, with respect to Mr. Becker's failure to disclose the transfer of the West Wood Sage Drive Property, only that "[u]pon inquiry, the Debtor also disclosed . . . that on May 7, 2018, he had transferred the Property into Ta-Von Becker's name . . . . Upon information and belief, this initially

Chesterfield County Virginia Circuit Court.  Admitted without objection were the following exhibits offered by Mr. Becker:  (1) the Amended Chapter 13 Plan, (2) the Debtor's chapter 13 petition in the instant case, (3) a copy of the ledger of payments made by the Debtor to the chapter 13 trustee, (4) an unsigned waiver of the statute of limitations (the "Waiver"), (5) the Debtor's chapter 7 discharge order, (6) a copy of an order granting an amended motion for relief, and (7) Mr. Becker's proof of payments to his chapter 7 trustee.

Mr. and Mrs. Becker each testified at the hearing.  Mr. Becker admitted that his conveyance of the West Wood Sage Property to himself and Mrs. Becker was not initially disclosed in his bankruptcy case and that this ultimately led to the conversion of his case to chapter 7.  He attributed his failure to disclose the transfer to medical issues and a misunderstanding of his obligation to report it in his bankruptcy schedules.  He purchased the West Wood Sage Property before his marriage to Mrs. Becker and claims that he was "tricked" by Mrs. Becker into conveying the property from himself to himself and his wife prior to his bankruptcy filing.  He testified that the conversion of his case to chapter 7 was necessitated by Mrs. Becker's refusal to sign the Waiver, which would have waived the statute of limitations for commencing an avoidance action against her and allowed him to

---

undisclosed transfer resulted in the transfer of non-exempt equity in the West Wood Sage Drive Property (estimated at $54,844.00) from a sole fee simple interest to the Debtor and his spouse as tenants by the entireties, without compensation."  Neither the Motion to Convert nor the Settlement Motion described the circumstances involved in the transfer. The Settlement Motion states further that "[t]he Trustee, in the exercise of her business judgment, believes that the Settlement is fair and equitable and . . . avoids litigating any issues related to the Debtor's claimed exemptions . . . ."  No action to oppose or revoke Mr. Becker's discharge was commenced by either the Trustee or any other party.

make payments over the term of his proposed plan.  After the conversion, he

negotiated a settlement of the chapter 7 trustee's objection to his tenancy by the

entireties exemption by agreeing to make payments to the trustee totalling

$25,000.00.  He has completed the payments.  He wishes to finalize his divorce,

including the division of property, and asserts that having to wait for up to five

years for Mrs. Becker to complete her bankruptcy case would prevent him from

moving on with his life.  Mr. Becker acknowledged that he did not file a proof of

claim in Mrs. Becker's current case.

Mrs. Becker testified that she resides at the Heathers Crossing Property, is

making the mortgage payments for that property, and is current with her payments

to the chapter 13 trustee. She also testified that Mr. Becker is currently receiving

rent in connection with the West Wood Sage Property.  She testified that she doesn't

have the wherewithal to pay for an attorney to represent her in state court domestic

proceedings and claims that having to do so would "wreck" her chapter 13 case.

Neither Mr. nor Mrs. Becker directly contradicted the other's testimony.

Mr. Becker's bankruptcy petition was filed in this Court on November 21,

2018.  In his petition, he designated his residence as 1616 Birchview Court,

Henrico, VA.  However, in Part 1 of Schedule A/B, he listed the Heathers Crossing

Property as his primary residence, indicating that he owned the property with

another as tenants by the entirety.[9]  He listed himself as the sole owner of the West

---

[9] Although various documents from Mr. Becker's bankruptcy case and from each of Mrs.
Becker's bankruptcy cases were admitted into evidence without objection, the parties did
not submit all of the documents from the parties' bankruptcy filings that the Court finds to
be relevant in determining the facts in this matter.  The parties having offered various

Wood Sage Property.  In his SFA, he stated that he is married, although in Schedule A/B, he made a reference to an "estranged spouse" when describing his interest in a lawnmower.

For his prior addresses, Mr. Becker stated that he lived at the Heathers Crossing Property from July 2018, to August 2018.  He made no reference to his spouse in Schedule I, where he listed his income, describing her wages as "N/A." Although these representations would suggest that he and Mrs. Becker were separated at the time of his bankruptcy filing, in his "Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period" (Official Form 122C-1), Mr. Becker indicated that there were two people in his household.[10]  He listed his non-filing spouse's income as 0.00 and made no marital adjustment for his spouse's separate expenses.  Mrs. Becker was not included on his List of Creditors nor was there any reference to prior or pending divorce proceedings.  In Schedule J

---

documents and testimony regarding the Beckers' prior bankruptcies and having asked the Court to take judicial notice thereof, the Court finds it appropriate and helpful to include in the record additional documents and filings submitted by each of the parties in their respective bankruptcy cases.  These documents, which were filed under penalty of perjury, are referenced in the Court's Findings of Fact, are relevant to this proceeding, and contribute to an understanding of the timeline and the relationship between the parties. Accordingly, the Court takes judicial notice of each of the parties' prior bankruptcy cases and their submissions therein pursuant to Rule 201 of the Federal Rules of Evidence, which provides:

> (b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it:
> (1) is generally known within the trial court's territorial jurisdiction; or
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

*See Brown v. Ocwen Loan Scv., LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016). The Court notes that in these documents, Mr. Becker also refers to the "Heathers Crossing" address rather than "Heather Crossing."

[10] In Schedule J, Mr. Becker states that he has no dependents.

of his amended schedules,[11] filed after his case was converted to chapter 7, Mr.

Becker stated "Debtor lives with family and contributes to the household expenses."

Mrs. Becker's first bankruptcy case, a no asset chapter 7, was filed on

October 3, 2019.  She represented that she was residing at the Heathers Crossing

Property and listed a joint ownership interest in both the Heathers Crossing

Property and the West Wood Sage Property, claiming both exempt as tenants by the

entirety.  In her SFA, she stated she was married.  She also claimed to be

responsible for the mortgage debts on both properties.  On Schedule H, she stated

that she had no codebtors.  In Schedule I, she listed no income from her non-filing

spouse, designating it "N/A," and she stated she had no dependents.  Her budget did

not include any reference to income or expenses related to the West Wood Sage

Property.  Her Statement of Intent stated that she would "retain and pay" the First

National Bank debt secured by the Heathers Crossing Property; however, when

addressing her intent with respect to SunTrust Mortgage on the West Wood Sage

Property, she stated she would "Retain Name on Title by Entireties."  On her

"Chapter 7 Statement of Your Current Monthly Income" (Official Form 122A-1), she

checked the box labeled "Living separately or are legally separated" and in doing so,

represented "under penalty of perjury that you and your spouse are legally

separated under nonbankruptcy law that applies or that you and your spouse are

living apart for reasons that do not include evading the Means Test requirements."

---

[11] Case No. 18-35875-KRH, ECF No. 66.

Mr. Becker was neither listed as a creditor nor included on the list of creditors to receive notices.  She received her chapter 7 discharge on January 9, 2020.

The parties offered little to no evidence at the August 25th hearing concerning their relationship, either past or present.  Their inconsistent filings in their bankruptcy cases, submitted under penalty of perjury, add to the confusion. The Court finds, however, that the parties are currently separated, with Mr. Becker residing at 1616 Birchview Court and Mrs. Becker residing at the Heathers Crossing Property.  Mrs. Becker neither receives or makes payments related to the West Wood Sage Property and, while this property appears to be the most significant marital asset subject to equitable distribution, it is not necessary to an effective reorganization in Mrs. Becker's current chapter 13 case.

## Conclusions of Law

The Automatic Stay Applies to Equitable Distribution.  The filing of a bankruptcy petition automatically stays most actions against the debtor and property of the bankruptcy estate.  *See* 11 U.S.C. § 362(a).  The exceptions to the automatic stay are set forth in 11 U.S.C. § 362(b) and include § 362(b)(2)(A)(iv), which provides that the stay does not apply to a proceeding "for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate."  11 U.S.C.§ 362(b)(2)(A)(iv).  This exception specifically provides that the stay applies to property of the estate that is subject to division in a divorce case.

This Court has interpreted § 362(b)(2)(A)(iv) to mean that the automatic stay does not apply to property of the debtor that is not property of the estate.  In *Secrest v. Secrest (In re Secrest)*, 453 B.R. 623, 627 (Bankr. E.D. Va. 2011), the Court stated that despite the existence of the automatic stay, "[e]quitable distribution proceedings concerning property that is not property of the estate may proceed."

*Secrest* concerned a chapter 7 estate, including a house with considerable equity held by the debtor and his wife as tenants by the entirety.  In a footnote to the opinion, the Court noted that "[g]enerally, property claimed exempt ceases to be property of the estate and would be subject to equitable distribution . . . ." *Id*. at 633, n.6.  This statement would lead one to conclude that exempt property would not be subject to the stay and could therefore be subject to equitable distribution in state court without first obtaining relief from the stay.  However, the Court went on to say that "even if claimed exempt, [the house] would be administered by the trustee for the benefit of at least one joint creditor."  *Id*.  So while *Secrest* pays lip service to the plain language of § 362(b)(2)(A)(iv), it also illustrates the difficulty that parties and, more importantly, the state court would have in determining whether various marital property interests have been excluded from the bankruptcy estate and are available for equitable distribution.  When one of the parties is a debtor in a chapter 13 bankruptcy, where the stay may be in place for years and where property interests may change during the course of the bankruptcy case, the determination of what property is or is not estate property is even more

14

challenging.[12]  For practical purposes, it is unrealistic to expect the state court to
first determine whether certain property interests are property of the bankruptcy
estate and then confine itself to the equitable distribution of only those marital
assets.

Furthermore, whether the automatic stay applies to non-estate property was
not the issue before the Court in *Secrest*.  The Court finds *Secrest* to be of little
precedential value or guidance in this case.[13]

Unlike *Secrest*, the debtor in this case is a chapter 13 debtor.  An opinion
issued by the bankruptcy court for the Eastern District of North Carolina several
years after *Secrest*, involving a chapter 13 estate, is more instructive.  In *In re
Jones*, 556 B.R. 219 (Bankr. E.D.N.C.), *aff'd*, *Jones v. Jones*, No. 7:16–cv–00058–D
(E.D.N.C. Dec. 5, 2016), the court first determined that equitable distribution under
North Carolina law is not an action or proceeding for the "dissolution of a marriage"
that would be excepted from the automatic stay under § 362(b)(2)(A)(iv).  *Id.* at
222.[14]  Having found that equitable distribution is a separate proceeding from

---

[12] In a case under chapter 13, property of the estate includes, in addition to property
specified in § 541 of the Bankruptcy Code, 11 U.S.C. § 541, property described in § 541 that
the debtor acquires after the commencement of the case.  *See* 11 U.S.C. § 1306(a)(1).
[13] Neither party here has argued that the automatic stay does not prohibit equitable
distribution, despite the unchallenged claimed exemptions in assets likely to be involved in
state court equitable distribution proceedings and despite language contained in the
Amended Plan (ECF No. 30) and the Confirmation Order (ECF No. 45) revesting all
property of the estate in the Debtor.  The West Wood Sage Property is owned as tenants by
the entirety and there appear to be no joint debts entitled to be paid from the equity in the
property.  Nevertheless, the Court views the question whether the automatic stay is
applicable as a threshold issue that should be addressed before deciding whether to lift the
stay.
[14] Mr. Becker contends that the state court will not grant him a divorce unless the equitable
distribution matter can also be resolved, a contention the Debtor disputes.  Neither party
offered any insight as to how the Chesterfield Circuit Court would rule on this issue.  While

dissolution of a marriage under North Carolina law, the Court then held that "the

automatic stay bars the recovery of pre-petition claims against property of the

debtor, not merely property of the bankruptcy estate." *Id.* at 223 (citing 11 U.S.C.

§ 362(a)(1)).[15] As a consequence, it found that the stay was applicable to the

debtor's 401(k) even though it was admittedly not property of the bankruptcy

estate.[16]

The same court subsequently doubled down on its decision in *Jones* when it

issued its opinion in *In re Rose*, 563 B.R. 606 (Bankr. E.D.N.C. 2016), another

chapter 13 case.  After noting that its decision in *Jones* had been affirmed by the

district court, the court held that the debtor's interest in an Employee Stock Option

---

the general procedures, or the local customs, in state court are unclear, it appears that the
Code of Virginia permits the granting of a divorce without immediately resolving equitable
distribution. *See* Va. Code § 20-107.3(A) (2019).  As under North Carolina law as applied in
*In re Jones*, 556 B.R. 219 (Bankr. E.D.N.C.), *aff'd*, *Jones v. Jones*, No. 7:16–cv–00058–D
(E.D.N.C. Dec. 5, 2016), because marital dissolution and equitable distribution are
severable under Virginia law, a proceeding for equitable distribution is not one for
dissolution of a marriage.

[15] The court pointed out that the Bankruptcy Code provides that a "claim against the
debtor" includes a "claim against property of the debtor," *Jones,* 556 B.R. at 223 (citing 11
U.S.C. § 102(2)), and that if there were no automatic stay in effect with respect to property
that is not property of the estate, the exception contained in § 362(b)(2)(B), providing that
the stay is not operative against "the collection of a domestic support obligation from
property that is not property of the estate" would be meaningless.  The court went on to say
that "even if the court were to interpret §362(b)(2)(A)(iv) as making the stay inapplicable to
property that is not property of the estate, it would only apply to 'proceeding[s] seek[ing] *to
determine the division* of property.' § 362(b)(2)(A)(iv) (emphasis added).  In contrast,
ultimately Ms. Jones wants the court to find that the stay is not in effect as to the *collection*
of property that is not property of the estate.  This is clearly foreclosed by the fact that the
only exceptions to the stay with regard to collection involve domestic support obligations.
*See* §§ 362(b)(2)(B); 362(b)(2)(C).  The court rejects Ms. Jones' interpretation
of § 362(b)(2)(A)(iv) and finds that the automatic stay is in place with respect to the debtor's
401(k)." *In re Jones,* 556 B.R. at 223.

[16] The United States Supreme Court has held that an anti-alienation clause required of
ERISA plans under 29 U.S.C. § 1056(d)(1) satisfies the requirements of § 541(c)(2), thus
making ERISA qualified accounts excluded from a debtor's bankruptcy estate. *Patterson v.
Shumate*, 504 U.S. 753 (1992).

Plan, which was not property of the bankruptcy estate, was nevertheless protected by the automatic stay. *Id*. at 614.

Here, neither party has specifically identified the property that would be subject to equitable distribution.  It is clear from the record, however, that the West Wood Sage Property is the most valuable marital asset.[17]  The Debtor's tenancy by the entirety exemption in this property has not been challenged.  Moreover, the Amended Plan's confirmation order provides that, upon entry, all property of the estate shall revest in the Debtor.  It follows that one could find that the assets that would be subject to equitable distribution in state court are not property of the estate.  Nevertheless, the Court concurs with the decision in *In re Jones* and finds that the automatic stay prevents Mr. Becker from proceeding with equitable distribution in state court with respect to any property owned by the Debtor, including the West Wood Sage Property. It now falls upon the Court to determine whether the stay should be terminated or modified to permit Mr. Becker to pursue equitable distribution.

<u>The Automatic Stay Should be Lifted to Permit Mr. Becker to Pursue Equitable Distribution</u>.  Section 362(d) of the Bankruptcy Code provides that "[o]n request of a party in interest . . . the court shall grant relief from the stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ."  In *Wells Fargo Bank, N.A. v. Vardan (In re Vardan)*, Case No. 17-13848-KHK, 2018 WL 6287984 (Bankr. E.D. Va. Nov. 30, 2018),

---

[17] By all indications, the Heathers Crossing Drive Property has little to no equity.

supplemented by 2019 WL 654764 (Bankr. E.D. Va. February 15, 2019), this Court

held that because the Bankruptcy Code includes no definition of what constitutes

"cause," a determination of whether relief is appropriate must be made on a case by

case basis. *Id.* at *6. *See also Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345

(4th Cir. 1992). In general, the decision whether to lift the automatic stay is left to

the discretion of the bankruptcy judge. *Id.* The burden, however, is on the movant

to show that cause exists for relief from the automatic stay. *Secrest*, 453 B.R. at

633.

The Fourth Circuit Court of Appeals has stated that deciding whether to lift

the stay to allow a state court action for equitable distribution to proceed requires

balancing the potential prejudice to the estate against the hardships incurred by

the movant if relief is denied. *Robbins*, 964 F.2d at 345. In *Robbins*, the court

identified three factors that should be considered by the bankruptcy court when

making its decision: (1) whether the issues in the pending litigation involve only

state law, so the expertise of the bankruptcy court is unnecessary; (2) whether

modifying the stay will promote judicial economy and whether there would be

greater interference with the bankruptcy case if the stay were not lifted because

matters would have to be litigated in bankruptcy court; and (3) whether the estate

can be protected properly by a requirement that creditors seek enforcement of any

judgment through the bankruptcy court." *Id.*[18] The court also emphasized that

---

[18] *See also Roberge v. Roberge (In re Roberge)*, 188 B.R. 366 (E.D. Va. 1995), *aff'd*, 95 F.3d 42
(4th Cir. 1996), which utilizes the same factors set forth in *Robbins v. Robbins (In re
Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992).

domestic matters are "primarily for the state courts to decide." *Robbins*, 964 F.2d at

344-45 ("[T]he bankruptcy court correctly placed equitable distribution disputes in

the category of cases in which state courts have a special expertise and for which

federal courts owe significant deference.").

In this case, the *Robbins* factors favor granting relief from the automatic

stay. The equitable distribution litigation that Mr. Becker seeks to pursue is an

area of law in which the state court has a special expertise that is not shared by the

bankruptcy court. Judicial economy would not be served by having the bankruptcy

court adjudicating the parties' respective property interests. The Amended Plan

establishes the rights of the creditors, and those rights will not be affected by

permitting the state court to proceed with equitable distribution, especially if the

Court requires Mr. Becker to first seek enforcement of any award through the

bankruptcy court.

When balancing the hardship to Mr. Becker if relief were to be denied against

the potential prejudice to the Debtor's bankruptcy estate should relief be granted, it

is also evident that the balancing test favors Mr. Becker. Denying relief would

result in Mr. Becker's having to wait for as long as five years to separate his

property and finances from Mrs. Becker. Mrs. Becker, on the other hand, does not

reside at the West Wood Sage Property and would not be directly impacted by

allowing the state court to equitably divide it. She receives no income from the

property and does not make payments on account of its mortgage. According to her

budget, she contributes nothing to the ongoing expenses and receives nothing

19

associated with the property.  There is no evidence that this property is necessary to her reorganization.

The Court finds it significant that the Debtor is not eligible to receive a discharge in this case.[19]  Mr. Becker's equitable distribution claim will not be discharged and will remain after her present bankruptcy case has been completed. The Debtor has made no provision in her Amended Plan for Mr. Becker, and the Amended Plan otherwise provides only a 1% distribution to unsecured creditors.[20]

The Debtor contends that granting relief from the stay to Mr. Becker to pursue equitable distribution in state court would "wreck" her bankruptcy case. This assertion appears to be based solely on the prospect of her having to incur the expense of employing counsel to represent her in state court.  She has described no other negative ramifications that would result from the granting of relief. Nevertheless, she maintains that Mr. Becker should wait until the completion of her chapter 13 bankruptcy case before being permitted to pursue equitable distribution.

Mrs. Becker's difficulty, financial or otherwise, in retaining an attorney to represent her in state court is insufficient to overcome the hardship to Mr. Becker that would result from denying relief.  The need to retain an attorney to represent her, or any chapter 13 debtor, with respect to matters other than the bankruptcy

---

[19] The court in *In re Rose,* 563 B.R. 606 (Bankr. E.D.N.C. 2016) denied relief to allow equitable dissolution after pointing out that the movant's claim for equitable distribution was subject to discharge upon successful completion of a confirmed chapter 13 plan. *Id.* at 614.
[20] Mr. Becker did not file a proof of claim and will not receive distributions from the chapter 13 trustee.

case itself could arise at any time during the five-year period for chapter 13

bankruptcy cases permitted under the Bankruptcy Code.  Mrs. Becker concedes that

relief from the automatic stay is not necessary to pursue a divorce without equitable

distribution which, were Mr. Becker to decide to pursue divorce proceedings without

equitable distribution, would presumably necessitate the retention of counsel at any

rate.  One would assume that opposition to a motion for relief on the basis that

granting relief would result in the need for a debtor to retain counsel could, and

likely would, be raised in nearly any proceeding to lift the automatic stay were it to

be considered a viable defense, and the Court will not accept it as a valid defense to

the Motion in this case.  Moreover, there is nothing prohibiting Mrs. Becker from

filing another bankruptcy case upon the conclusion of the current case in order to

obtain another stay, and further delay, of equitable distribution proceedings.  On

balance, Mr. Becker's interest in resolving his domestic issues sooner than the

expiration of the five year Amended Plan term, and perhaps even longer, outweighs

the Debtor's apparent inability to afford counsel to represent her in state court.

The Debtor argues that relief should be denied to Mr. Becker because of his

"unclean hands," pointing to his transfer of the West Wood Sage Property to himself

and the Debtor before filing his own bankruptcy.  "The doctrine of 'unclean hands' is

"an ancient maxim of equity courts" requiring that a litigant who seeks to invoke an

equitable remedy "must not himself have been guilty of any inequitable or wrongful

conduct with respect to the transaction or subject matter sued on." *Cline v. Berg*,

273 Va. 142, 147, 639 S.E.2d 231, 233–34 (2007) (quoting *Richards v. Musselman*,

221 Va. 181, 185, 267 S.E.2d 164, 166 (1980).  The Fourth Circuit Court of Appeals

has recognized this doctrine as an affirmative defense in bankruptcy cases to deny

relief to a creditor opposing a debtor's discharge "when there is a close nexus

between a party's unethical conduct and the transactions on which that party seeks

relief."  *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806, 810 (4th

Cir. 2001), *aff'd in relevant part sub nom. Uwimana v. Uwimana*, 274 F.3d 806 (4th

Cir. 2001). *See also OSB Mfg., Inc. v. Hathaway (In re Hathaway)*, 364 B.R. 220, 243

(Bankr. E.D. Va. 2007); *Hutchinson v. Bromley (In re Bromley)*, 126 B.R. 220, 223

(Bankr. D. Md. 1991) (plaintiff's hands were unclean because of his participation in

defrauding the bank, thus precluding him from claiming that the debt was

nondischargeable).

Neither party in this case has presented evidence of the circumstances

surrounding the transfer of the West Wood Sage Property, aside from Mr. Becker's

testimony that he was "tricked" by the Debtor into conveying her a one-half

interest, an allegation that the Debtor has not disputed.  Neither the Motion to

Convert nor the Settlement Motion included allegations of fraud, nor did the Court

make any findings of fact in connection with either motion.  Mr. Becker's discharge

was not challenged by his chapter 7 trustee or any of his creditors.

In most actions to set aside a fraudulent transfer, the transferee would be the

defendant. In Mr. Becker's case, no avoidance action was instituted by the chapter 7

trustee.  Instead, Mr. Becker paid $25,000 to the chapter 7 trustee in order to

resolve her objection to his claimed exemption in the West Wood Sage Property.  In

this case, based on the record, whether either of the parties comes to the Court with complete honesty is questionable.[21]  For purposes of invoking the doctrine of "unclean hands" as an affirmative defense to the Motion, however, the Debtor has failed to prove that Mr. Becker committed a fraudulent act.

Even if the Court were to find that the transfer of the West Wood Sage Property was fraudulent, which it cannot do on the basis of the evidence before it, the "close nexus" that must exist between Mr. Becker's conduct in transferring the property to himself and Mrs. Becker and the subject matter of the Motion, as required by *Uwimana*, does not exist.  The Motion does not seek to undo the transfer of the West Wood Sage Property; rather, it only seeks the termination of the automatic stay to permit Mr. Becker to pursue equitable distribution in connection with his divorce from the Debtor.  Accordingly, the argument that Mr. Becker should be stayed from resolving his interest in the property due to unclean hands is unavailing.

## Conclusion

The rights of the creditors in this case, and in Mr. Becker's chapter 7 case, have been established and will remain in place even if Mr. Becker is granted relief from the automatic stay in order to pursue equitable distribution in state court.  It is the division of marital property that remains unsettled.  "[A]bsent extraordinary

---

[21] The true nature of the relationship between the parties is, at best, unclear.  Neither party offered any insight during their testimony.  The inconsistencies in each party's set of bankruptcy schedules regarding their living arrangements, their joint assets, and the sharing of income and expenses during the pendency of their collective three bankruptcy cases leave more questions than answers.

circumstances, the divorce court is the best forum for the division of marital property." *In re Dryja*, 425 B.R. 608, 613 (Bankr. D. Colo. 2010). There are no extraordinary circumstances existing in this case that would cause the bankruptcy court to be the appropriate venue to address equitable distribution.

Mr. Becker has carried his burden of establishing cause to grant relief from the automatic stay pursuant to § 362(d). Therefore, the Court will lift the stay to permit Mr. Becker to proceed with equitable distribution in state court in order to determine the parties' respective rights to their marital property. The Court will retain jurisdiction to adjudicate the impact of the state court's division of property on the Debtor's bankruptcy case by requiring Mr. Becker to obtain further relief from this Court before proceeding to enforce any state court judgment.

An order consistent with this opinion will issue.

Signed: October 6, 2021

_____/s/ Keith L. Phillips_____
United States Bankruptcy Judge

Copies:

Entered on Docket: Oct 6 2021

Ta-Von Becker
5818 Heather Crossing Drive
Chesterfield, VA 23832

James H. Wilson, Jr.
4860 Cox Road, Suite 200
Glen Allen, VA 23060

Eric C. Howlett
Klementina V. Pavlova
SANDS ANDERSON PC
P.O. Box 1998
Richmond, Virginia 23218-1998